### IN THE UNITED STATES DISTRICT COURT FOR
### THE NORTHERN DISTRICT OF TEXAS
### FORT WORTH DIVISION

| | |
|---|---|
| AMADEO RICARDO ROBERTS, on Behalf of the Estate of ALICE FAYE ROBERTS,<br><br>    Plaintiff,<br><br>V.<br><br>WEST SIDE CAMPUS OF CARE GP, LLC D/B/A WEST SIDE CAMPUS OF CARE; CORYELL COUNTY MEMORIAL HOSPITAL AUTHORITY,<br><br>    Defendants. | Civil Action No.: _____ |

### COMPLAINT

NOW, comes the Plaintiff, Amadeo Ricardo Roberts, on Behalf of the Estate of ALICE FAYE ROBERTS, by and through his undersigned counsel, Jacob Runyon, Esquire, Nicola Gray, Esquire, and Dawn Smith, Esquire; and the law firm of Smith Clinesmith, LLP, and files this Complaint for Defendants' violation of duties imposed upon them under the Omnibus Budget Reconciliation Act of 1987 ("OBRA"); the Federal Nursing Home Reform Act ("FNHRA"); 42 U.S.C. §1396r, *et al.*; and the implementing regulations found at 42 C.F.R. §483, *et al.*, as well as under Texas Health and Safety Code § 242.001, et seq.,  against Defendants West Side Campus of Care GP, LLC d/b/a West Side Campus of Care and Coryell County Memorial Hospital Authority.

### Nature of Action

1.      This is a proceeding under 42 U.S.C. §1983 to remedy deprivations of rights under the Omnibus Budget Reconciliation Act of 1987; the Federal Nursing Home Reform Act; and the Federal Nursing Home Regulations as found at 42 C.F.R. §483, which amplify and implement the statutory rights created under OBRA and FNHRA.

1

**Jurisdiction and Venue**

2.      As the instant case presents issues of federal law, jurisdiction is proper in this forum as a federal question, pursuant to 28 U.S.C. §1331. This Court retains supplemental jurisdiction over state claims included in this matter based on 28 U.S.C. § 1367(a).

3.      Venue lies within this judicial district, since all of the actions complained of herein occurred within the Northern District of Texas, Fort Worth Division.

**Parties**

4.      Plaintiff Amadeo Ricardo Roberts is an adult who resides at 111 Highland Court, Springtown, Texas 76082.

5.      Amadeo Ricardo Roberts is the son of ALICE FAYE ROBERTS.

6.      ALICE FAYE ROBERTS died on February 6, 2026.

7.      Amadeo Ricardo Roberts is in the process of being appointed Administrator of the Estate of ALICE FAYE ROBERTS.

8.      Plaintiff brings this action as the personal representative of the Estate of Alice Faye Roberts.

9.      No prior action has been filed related to the violation of resident rights and injuries related to violations of resident rights.

10.      Defendant Coryell County Memorial Hospital Authority is a governmental or quasi-governmental entity with its principal office located at 1507 West Main Street, Gatesville, TX 76528. Defendant Coryell may be served through it's Chief Executive Officer, David Byrom, at 1507 W. Main Street, Gatesville, Texas 76528.

11.      Defendant Coryell County Memorial Hospital Authority, as a governmental or quasi-governmental entity, at all times relevant hereto, was acting under the color of state law.

12.      At all times relevant to this Complaint, Coryell County Memorial Hospital

2

Authority owned and operated West Side Campus of Care for patient care services, including that rendered to ALICE FAYE ROBERTS.

13. At all times relevant hereto, Defendant Coryell County Memorial Hospital Authority was responsible for the policies, practices, supervision, implementation, and conduct of all matters pertaining to West Side and was responsible for the appointment, training, supervision, and conduct of West Side personnel acting jointly with West Side Campus of Care GP, LLC.

14. Defendant West Side Campus of Care GP, LLC d/b/a West Side Campus of Care is a Texas limited liability company with its principal office located at 21950 S. Las Vegas Trail, White Settlement, Texas 76108.

15. Defendant West Side Campus of Care GP, LLC d/b/a West Side Campus of Care can be served via its registered agent Brad Stebbins at 602 E. Whaley Street, Longview, Texas 75601.

16. Defendant West Side Campus of Care GP, LLC d/b/a West Side Campus of Care owns and operates West Side Campus of Care ("West Side"), which is a skilled nursing facility located at 21950 S. Las Vegas Trail, White Settlement, Texas 76108.

17. At all relevant times hereto, West Side operated as a long-term care nursing facility.

18. At all times relevant hereto, Defendant West Side Campus of Care GP, LLC d/b/a West Side Campus of Care operated West Side as a "skilled nursing facility," as that term is defined in 42 U.S.C. §1395i-3.

19. At all times relevant to this Complaint, West Side Campus of Care GP, LLC d/b/a West Side Campus of Care owned, managed, operated, supervised, and/or staffed West Side.

3

20. At all times relevant hereto, West Side was acting under the control of Defendant West Side Campus of Care GP, LLC d/b/a West Side Campus of Care, and by and through its duly authorized agents and/or employees who were then and there acting within the course and scope of their employment.

21. Defendant West Side Campus of Care GP, LLC d/b/a West Side Campus of Care is a limited liability company organized and existing under the laws of the State of Texas. At all times relevant hereto, Defendant West Side Campus of Care GP, LLC d/b/a West Side Campus of Care, acting through West Side, was responsible for the policies, practices, supervision, implementation, and conduct of all matters pertaining to West Side and was responsible for the appointment, training, supervision, and conduct of all West Side personnel. In addition, at all relevant times, Defendant West Side Campus of Care GP, LLC d/b/a West Side Campus of Care was responsible for enforcing the rules of West Side and for ensuring that personnel employed in the facility obey the Constitution and laws of the United States and of the State of Texas.

22. Defendants West Side Campus of Care GP, LLC d/b/a West Side Campus of Care and Coryell County Memorial Hospital Authority are hereinafter collectively referred to as "Defendants."

## Statement of Claims

23. All preceding paragraphs of this Complaint are incorporated herein, as if set more fully at length.

24. ALICE FAYE ROBERTS (hereinafter "MS. ROBERTS") was admitted to West Side on February 16, 2018 for long-term skilled nursing care.

25. Ms. ROBERTS required 24-hour skilled nursing care because she was paralyzed on her right side after suffering a stroke during eye surgery in 2017. At the time of her admission and throughout her residency, Ms. ROBERTS's conditions included right-sided

4

hemiplegia, a history of strokes, high blood pressure, asthma, aphasia, dysphagia, and a history of deep vein thrombosis for which she required anticoagulation therapy

26.     At baseline, Ms. ROBERTS was mostly bedbound, did not ambulate, required a 2-person assist to transfer to a motorized wheelchair, and communicated primarily by saying "yes" to everything due to her aphasia, with staff relying on facial expressions and pointing.

27.     Ms. ROBERTS required assistance with her activities of daily living, specifically, assistance with transfers and ambulation. Ms. ROBERTS was at high risk for skin breakdown. Based on her individual needs, Ms. ROBERTS required turning and repositioning every two hours and required to be placed on a toileting schedule to prevent moisture build-up and accumulation in Ms. ROBERTS's peri-area.

28.     During her time at West Side Campus of Care, Ms. ROBERTS did not receive assistance with activities of daily living. For the month of May 2024, assistance with locomotion on unit did not occur at all on at least 10 days. Ms. ROBERTS's record further does not show walking in corridor assistance offered for the month of May 2024 as evidenced by Point of Care records showing the notation "8:8" which, per the key, indicated that "activity did not occur".

29.     During her time at the facility, Ms. ROBERTS did not receive regular toileting from nursing staff. As a result, Ms. ROBERTS developed excoriation to the right buttocks on June 24, 2026, which then measured 0.6x0.6x0.3cm and presented with 90% granulation and 10% slough. Ms. ROBERTS underwent debridement of the wound.

30.     The wound continued to increase in size with the wound reaching a size of 2x3x0.3cm per the wound assessment on July 24, 2024.

31.     On July 31, 2024, Ms. ROBERTS suffered a fall at West Side Campus of Care. The fall was unwitnessed. Ms. ROBERTS was "found on the floor" in the early morning hours. EMS dispatch records reflect that a roommate reported the fall at 5:00 AM, and a nurse at the

facility confirmed the patient had fallen but was unsure of the exact time and did not know whether the fall was witnessed.

32.    The facility had obtained X-rays during the day that showed a right femur fracture. Despite this confirmed fracture finding, Ms. ROBERTS was not transferred via EMS to the hospital until much later that evening.

33.    At the emergency department, CT Imaging confirmed a comminuted impacted distal femur fracture with intercondylar notch and intra-articular extension. Additionally, a urinalysis completed for Ms. ROBERTS resulted turbid urine with protein $\geq$500, large blood, large leukocyte esterase, >182 RBC, >182 WBC, many bacteria — consistent with acute UTI.

34.    On admission to the hospital for femur fracture, Ms. ROBERTS  was identified as having a right medial buttocks pressure injury with foul, purulent drainage.

35.    Non-surgical management of the femur fracture was recommended with  knee immobilizer, and non-weight bearing to the right lower extremity.

36.    Ms. ROBERTS remained hospitalized until August 4, 2024  before being readmitted to West Side Campus of Care.

37.    On August 5, 2024, Ms. ROBERTS's right buttock wound measured 2x6x0.3cm. The wound persisted at least until September 3, 2024.

38.    Ms. ROBERTS died on February 6, 2026. Her death certificate listed hemiplegia following cerebral infarction affecting the right dominant side as the cause of death.

### **West Side's Understaffing, Below-Standard Care, and Impact on Resident Care**

39.    West Side gains much of its revenue and profit from taxpayer dollars by participating in federal and state-funded Medicare and Medicaid programs.

40.    In the Medicare/Medicaid system, every nursing home resident is assigned an "acuity" level which reflects the number and severity of that resident's medical conditions and

illnesses.

41. A resident with a higher acuity level places a greater demand for care and services on a nursing home and its staff.

42. Skilled nursing facilities, like West Side, use acuity levels to bill Medicare/Medicaid for reimbursement of daily care and services.

43. Medicare/Medicaid reimburses nursing facilities at a higher rate for care and services based on each resident's acuity rate and number of therapy minutes provided to that resident.

44. Accordingly, the higher the facility's acuity levels, the more revenue the facility will generate from Medicare/Medicaid.

45. This creates a financial incentive for nursing homes, such as West Side, to admit and keep residents with greater mental, physical, and psychological needs.

46. Every year, skilled nursing facilities (including West Side) must submit a Medicare Cost Report to The Centers for Medicare and Medicaid Services ("CMS"), in which the facility must account for each dollar received and spent.

47. A resident's acuity level is used by CMS to determine the number of hours the nursing home is expected to provide each day to meet resident needs.

48. CMS then pays the facility according to the hourly rate of reimbursement for the expected number of nursing hours required for each resident.

49. At the end of each fiscal quarter, the nursing home must provide CMS with an accounting of the hours it actually spent providing nursing care to residents.

50. To calculate nursing hours, facilities, such as West Side, add up the hours spent providing care to residents by Registered Nurses ("RNs"), Licensed Practical Nurses ("LPNs"), and nursing aides.

51.    Throughout the entire period of Ms. ROBERTS's residency at West Side (February 16, 2018 through her death on February 6, 2026), West Side failed to provide sufficient and expected licensed care to its residents (i.e., care provided by RNs and LPNs) or expected aide care to its residents.

52.    Specifically, during the third quarter of 2024, when Ms. ROBERTS acquired the right buttock skin breakdown and suffered a fall, West Side Campus of Care had overall nursing staff HPPD at 2.38, which is below the national average 3.78[1]

53.    During Ms. ROBERTS's residency, based on the acuity of its residents, West Side provided fewer nursing hours to residents than the anticipated minimum staffing promulgated by CMS.

54.    Managers, owners, and operators of West Side knew the facility was understaffed yet made no corrections to their budgeting to allow for additional needed staff to provide care to Ms. ROBERTS, including providing her with turning and repositioning every two hours and regular toileting and assistance with transfer, toileting and ambulation.

55.    Generally, clinical studies have shown that understaffing in nursing homes has led to reductions in the quality of care provided to residents, such as Ms. ROBERTS.[2]

56.    For example, a 2023 study[3] examined the impact of understaffing (or staffing

---

[1] https://data.cms.gov/quality-of-care/payroll-based-journal-daily-nurse-staffing//data/q3-2024?query=%7B%22filters%22%3A%7B%22rootConjunction%22%3A%7B%22label%22%3A%22And%22%2C%22value%22%3A%22AND%22%7D%2C%22list%22%3A%5B%5D%7D%2C%22keywords%22%3A%22west+side+campus%22%2C%22offset%22%3A0%2C%22limit%22%3A10%2C%22sort%22%3A%7B%22sortBy%22%3Anull%2C%22sortOrder%22%3Anull%7D%2C%22columns%22%3A%5B%5D%7D

[2] Harrington C, Edelman TS. Failure to Meet Nurse Staffing Standards: A Litigation Case Study of a Large US Nursing Home Chain. INQUIRY: The Journal of Health Care Organization, Provision, and Financing. 2018;55. doi: 10.1177/0046958018788686

[3] Mukamel DB, Saliba D, Ladd H, Konetzka RT. Association of Staffing Instability With Quality of Nursing Home Care. JAMA Netw Open. 2023;6(1):e2250389. doi:10.1001/jamanetworkopen.2022.50389.

"instability") on the quality of care that is provided in skilled nursing facilities, such as West Side.

57.     In particular, the study found elevated rates of understaffing of both LPNs and nursing aides (referred to as CNAs) is associated with worsened quality of care provided to residents.

58.     Specifically, the study found a statistically significant relationship between LPN/CNA understaffing and increased resident hospitalizations and emergency department visits.

59.     Falls and pressure ulcers, like those Ms. ROBERTS suffered, are injuries which were directly associated with inadequate staffing levels to provide Ms. ROBERTS with the services she needed base don her individual needs.

60.     Ms. ROBERTS required an emergency department visit and subsequent hospitalization due to the poor care she received at West Side, ultimately resulting in a fracture of her right femur and the development of pressure injuries.

61.     Here, West Side provided below-average staffing to its residents, including Ms. ROBERTS, thereby contributing to adverse patient outcomes, including Ms. ROBERTS's fall, fracture, and pressure injuries.

62.     This below-average staffing, per the literature analysis, leads to increased falls, pressure ulcers, and infections, and accordingly, at a minimum, increased the risk of Ms. ROBERTS, a known fall risk and bedbound resident with limited mobility, of developing injuries related to falls and pressure ulcers.

## COUNT I
### Deprivation of Civil Rights Enforceable Via 42 U.S.C. §1983

### SURVIVAL

9

63.    All of the preceding paragraphs of this Complaint are incorporated herein, as if set forth more fully at length.

64.    At all times relevant to this Complaint, West Side Campus of Care was acting under the color of state law and as an agent of the State of Texas. Additionally, Defendant Coryell County Memorial Hospital Authority, as a governmental or quasi-governmental entity, was acting under the color of state law at all relevant times.

65.    The Defendants are bound generally by the 1987 Omnibus Budget Reconciliation Act (OBRA) and the Federal Nursing Home Reform Act (FNHRA) which was contained within the 1987 OBRA. See: 42 U.S.C. §1396r. The Defendants are also bound generally by the OBRA/FNHRA implementing regulations found at 42 C.F.R. §483, et seq., which served to further define and amplify specific statutory rights set forth in the above-mentioned statutes.

66.    The statutes in question, as amplified and further defined by the detailed regulatory provisions, create rights which are enforceable pursuant to 42 U.S.C. §1983 as decided by the United States Supreme Court in *Health and Hosp. Corp. of Marion Cty. v. Talevski*, 599 U.S. 166 (2023), as the language of these regulations and statutory provisions clearly and unambiguously creates those rights.

67.    The Defendants in derogation of the above statutes and regulations, and as a direct and proximate result of the following violations of those statutes and regulations, caused serious injury, harm, pain, suffering, and death to Alice Faye Roberts.

68.    The Defendants in derogation of the above statutes and regulations, and as a custom and policy, failed to comply with the aforementioned regulations as follows:

> a.    By failing, as a custom and policy, to provide services with reasonable accommodations of the individual needs and preferences of residents, such as Alice Faye Roberts, including the failure to provide adequate

supervision and fall prevention measures for a known bedbound resident requiring two-person assistance for transfers, as required by 42 U.S.C. §1396r(c)(1)(A)(v)(I); Ms. ROBERTS required q2hr turning and repositioning to prevent skin breakdown. She also needed regular toileting during her residence at West Side Campus of Care to prevent moisture buildup and retention to the periarea. She did not receive these services that were based on her individual need on several days during her residence including on, but not limited to the following dates: February 7, 2024, March 31, 2024, May 20, 2024, June 17, 2024, July 16, 2024 and August 9, 2024, to state a few dates. Additionally, Ms. ROBERTS required assistance with activities of daily living related to locomotion. During her residence at West Side Campus of Care, Ms. ROBERTS did not receive this needed assistance on many days including but not limited to May 11, 2024, May 12, 2024, May 14, 2024, May 15, 2024 and May 16, 2024

b.     By failing, as a custom and policy, to promote the care of patients, including Alice Faye Roberts, in a manner and in an environment that maintained or enhanced her dignity, including the failure to ensure proper monitoring and timely response to her care needs, as required by 42 C.F.R. §483.15 and 42 U.S.C. §1396r(c)(1)(A)(v)(I); in that Ms. ROBERTS required q2hr turning and repositioning to prevent skin breakdown. She also needed regular toileting during her residence at West Side Campus of Care to prevent moisture buildup and retention to the periarea. She did not receive these services that were based on her individual need on several days during her residence including on, but not limited to the following dates: February 7, 2024, March 31, 2024, May 20, 2024, June 17, 2024, July 16, 2024 and August 9, 2024, to state a few dates. Additionally, Ms. ROBERTS required assistance with activities of daily living related to locomotion. During her residence at West Side Campus of Care, Ms. ROBERTS did not receive this needed assistance on many days including but not limited to May 11, 2024, May 12, 2024, May 14, 2024, May 15, 2024 and May 16, 2024. Additionally, Ms. ROBERTS required prompt assessment and referral to a higher level of care after her fall on July 31, 2024.

Nursing staff of West Side Campus of Care delayed referral of Ms. ROBERTS to the hospital.

c. By failing, as a custom and policy, to develop a comprehensive Care Plan for patients, including Alice Faye Roberts, that incorporated necessary fall prevention protocols, pressure ulcer prevention measures, and appropriate anticoagulation management, as required by 42 C.F.R. §483.20 and 42 U.S.C. §1396r(c)(1)(A)(i);

d. By failing, as a custom and policy, to allow patients such as Alice Faye Roberts to be fully informed in advance about care and treatment, to be fully informed in advance of any changes in care or treatment that may affect the resident's well-being, and to participate in planning care and treatment or changes in care and treatment, as required by 42 U.S.C. §1396r(c)(1)(A)(i);

e. By failing, as a custom and policy, to ensure that West Side Campus of Care's administrator and director of nursing properly monitored and supervised subordinate staff, thereby failing to ensure the health and safety of residents or patients, including Alice Faye Roberts, as required by 42 C.F.R. §483.75 in that Ms. ROBERTS was identified as having certain needed services based on her individual needs and accommodations. The West Side Campus of Care record demonstrates that Ms. ROBERTS did not consistently receive the services she needed; and there was persistence of violations due to administrative and management staff failing to supervise staff members to ensure that they were providing Ms. ROBERTS with her needed services.

69.     As a proximate result of Defendants' actionable derogation of their regulatory and statutory responsibilities as above-described, Ms. ROBERTS was injured as previously referenced, and suffered pain and distress as a result of West Side's poor care and treatment, which allowed her to suffer harm as described herein. As such, Plaintiff has suffered, and is entitled to recover the following damages, as well as an award of reasonable counsel fees, pursuant to 42 U.S.C. §1983 and 42 U.S.C. §1988:

a. Pain, suffering, inconvenience, anxiety, and nervousness of Alice Faye Roberts;

12

b.   Hospital, medical, and nursing expenses incurred on Alice Faye Roberts's behalf;

c.   Other losses and damages permitted by law; and,

d.   Any other damages as the Court sees fit to award.

**COUNT II**
**<u>Violations of Texas Health & Safety Code</u>**

70.    All of the preceding paragraphs of this Complaint are incorporated herein, as if set forth more fully at length.

71. The Texas Health & Safety Code establishes minimum standards of care and rights for residents of nursing facilities in Texas. *See* Tex. Health & Safety Code §§ 242.001, et seq.

72. Texas Health & Safety Code § 242.062 requires nursing facilities to implement quality assurance and performance improvement programs designed to maintain or improve the quality of care furnished in the facility and to identify and correct deficiencies.

73. Texas Health & Safety Code § 242.063 requires nursing facilities to provide each resident with sufficient nursing staff and supportive personnel to provide nursing and related services to attain or maintain the highest practicable physical, mental, and psychosocial well-being of each resident.

74. Defendants violated these statutory duties by failing to provide Ms. ROBERTS with adequate staffing, adequate fall prevention and supervision for a bedbound resident requiring two-person assist for all transfers, adequate pressure ulcer prevention measures, and adequate monitoring to prevent and address her deteriorating condition.

75. As a direct and proximate result of Defendants' violations of the Texas Health & Safety Code, Ms. ROBERTS suffered the injuries and damages alleged herein.

**COUNT III**
**<u>Medical Negligence</u>**

76. All of the preceding paragraphs of this Complaint are incorporated herein, as if set forth more fully at length.

77. Defendants owed Ms. ROBERTS a duty to provide skilled nursing care in accordance with the applicable standard of care for skilled nursing facilities in Texas.

78. This duty included, but was not limited to: providing adequate staffing; implementing appropriate fall prevention protocols for a known bedbound resident with right-sided hemiplegia requiring two-person assist for transfers; preventing the development of pressure ulcers in immobile residents; monitoring residents for changes in condition; ensuring proper anticoagulation management; and preventing infection.

79. Defendants breached their duty to Ms. ROBERTS by failing to provide adequate staffing, failing to implement appropriate fall prevention measures despite her bedbound status and complete dependence on staff for transfers, failing to prevent the development of pressure injuries to her buttocks, and failing to prevent infection.

80. As a result of these breaches, Ms. ROBERTS sustained an unwitnessed fall on July 31, 2024, resulting in a comminuted impacted distal right femur fracture, and was found to have developed pressure injuries to the buttocks with signs of infection, as well as an acute urinary tract infection.

81. As a direct and proximate result of Defendants' negligence, Ms. ROBERTS suffered severe and preventable injuries, pain and suffering.

**COUNT IV**
**Corporate Negligence**

82. All of the preceding paragraphs of this Complaint are incorporated herein, as if set forth more fully at length.

83. Defendants owed a duty to Ms. ROBERTS to exercise reasonable care in the selection, training, and supervision of nursing staff and other employees; to maintain adequate staffing levels; to establish and enforce policies and procedures to ensure resident safety; and to implement quality assurance programs.

84. Defendants breached these duties by maintaining grossly inadequate staffing levels, providing fewer nursing hours per resident per day than the minimum expected by CMS based on the acuity levels of their residents, and failing to budget and expend sufficient funds on staff, training, and care for residents including Ms. ROBERTS.

85. Defendants breached these duties by failing to properly train and supervise staff in fall prevention protocols and pressure ulcer prevention for high-risk, bedbound residents such as Ms. ROBERTS.

86. Defendants breached these duties by failing to implement and enforce adequate policies and procedures to prevent falls, ensure appropriate supervision and monitoring of bedbound residents, prevent pressure ulcers, maintain therapeutic anticoagulation levels, and monitor residents for changes in condition.

87. As a direct and proximate result of Defendants' corporate negligence, Ms. ROBERTS suffered the injuries and damages alleged herein.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff Amadeo Ricardo Roberts, individually and on behalf of the Estate of Alice Faye Roberts, respectfully requests that this Court:

a. Enter judgment in favor of Plaintiff and against all Defendants;

b. Award Plaintiff damages in excess of Seventy-Five Thousand Dollars ($75,000.00), including:

- Pain, suffering, inconvenience, anxiety, and nervousness of Alice Faye Roberts;
- Hospital, medical, and nursing expenses incurred on behalf of Alice Faye Roberts;
- Mental anguish;
- Other losses and damages permitted by law; and
- Any other damages as the Court sees fit to award.

c. Award Plaintiff reasonable attorney's fees and costs pursuant to 42 U.S.C.

§1988;

d. Award pre-judgment and post-judgment interest as allowed by law; and

e. Grant such other and further relief as the Court deems just and proper.

WHEREFORE, the Plaintiff, Amadeo Ricardo Roberts, on Behalf of the Estate of Alice Faye Roberts, demands damages of the Defendants West Side Campus of Care GP, LLC d/b/a West Side Campus of Care and Coryell County Memorial Hospital Authority in excess of Seventy-Five Thousand Dollars ($75,000.00), plus interest, costs of suit and attorneys' fees.

**A JURY TRIAL IS DEMANDED.**

Respectfully submitted,

**SMITH CLINESMITH LLP**
*BY: /s/Nicola Gray*
Nicola Gray
State Bar No. NY4734042
Dawn M. Smith
State Bar No. 24079953
Jacob Runyon
State Bar No. 24083771
325 N. St. Paul Street, Suite 2775
Dallas, TX 75201
214-953-1900 Telephone
214-953-1901 Facsimile
nicola@fightingelderabuse.com
jacob@fightingelderabuse.com
dawn@fightingelderabuse.com
service@smithclinesmith.com

***ATTORNEYS FOR PLAINTIFF***